CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED

03/30/2026

LAURA A. AUSTIN, CLERK
BY: **/s/ Amy Fansler**
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| LUAY A. ALRAMMAH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:24-cv-00016 |
| | ) | |
| DANIEL P. DRISCOLL, Secretary, | ) | By:  Elizabeth K. Dillon |
| United States Department of the Army, | ) | Chief United States District Judge |
| *In his official capacity*,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Luay Alrammah asserts that he was the victim of discrimination when he was

terminated by his employer, The United States Army Corps of Engineers (USACE).[2]  Pending

before the court is Alrammah's motion for leave to file a third amended complaint.  (Dkt. No.

37.)  The court previously denied his motion for leave to file a second amended complaint,

finding that the claims against defendant, the USACE, as alleged in his proposed second

amended complaint, would be futile.  In his pending motion, Alrammah attempts to cure the

deficiencies identified by the court in his proposed second amended complaint and again asserts

three claims against USACE: (I) age discrimination in violation of the Age Discrimination in

---

[1]  Alrammah filed this action against Christine Wormuth, in her official capacity as the former United
States Secretary of the Army.  Daniel P. Driscoll is the current United States Secretary of the Army.  Accordingly,
pursuant to Federal Rule of Civil Procedure 25(d), Daniel P. Driscoll is hereby substituted as the defendant in place
of Christine Wormuth.

[2]  Alrammah filed this action against the United States Secretary of the Army.  The complaint clarifies that
USACE operates under the Secretary's authority, as detailed in the third amended complaint.  (Third Am. Compl.
¶ 2, Dkt. No. 37-2.)  Specifically, the complaint states, "Defendant is the Secretary of the United States, Department
of the Army, which shall include representatives and agents, including but not limited to the United States Army
Corps of Engineers ("USACE"), an engineer formation of the United States Army with global primary focuses on
engineering, construction, and civil works."  (*Id.*)  Because Alrammah's claims pertain to his employment with
USACE, this memorandum opinion will refer to the defendant as USACE to maintain clarity.

Employment Act (ADEA), (II) race discrimination in violation of Title VII, and (III) national

origin discrimination in violation of Title VII.  USACE has filed a response opposing

Alrammah's motion.  (Def. Br. Opp'n Third Am. Compl. 3, Dkt. No. 40.)  Alrammah has not

filed a reply to USACE's response in opposition, and the deadline for doing so has passed.

Neither party has requested a hearing, and the court finds that one is unnecessary to resolve the

matter.  Because Alrammah's third attempt to amend would also be futile, the court will deny

Alrammah's motion and dismiss this action with prejudice.

## I.  BACKGROUND[3]

Alrammah, a United States citizen of Arab and Iraqi descent, born in 1961, was

employed as a GS-0830-12/Project Engineer for USACE.  (Third Am. Compl. ¶¶ 4, 7, 8, 25, 43.)

Throughout his employment, Alrammah alleges that he performed his work duties at a

satisfactory level.  (*Id.* ¶¶ 9, 27, 45.)  He served as the point-of-contact for assigned

Area/Resident Offices, provided quality assurance and administrative support, and conducted

reviews for projects in their design phase.  (*Id.* ¶ 9.)  In addition, Alrammah visited construction

sites to evaluate project phases, prepared site visit reports, and liaised with the engineering and

project management divisions to ensure that design and construction quality of projects were

upheld.  (*Id.* ¶¶ 27, 45.)

However, Alrammah alleges that, during his employment with USACE, he was subjected

to discriminatory treatment based on his age, race, and national origin.  (Third Am. Compl.

¶¶ 19, 37, 56.)  Alrammah claims that his supervisor, Resident Engineer Ronaldo Rodriguez,

---

[3] The procedural background of this case is set forth in the court's prior memorandum opinion denying Alrammah's motion for leave to file his proposed second amended complaint (Dkt. No. 35, 2–3) and is incorporated herein by reference.  The factual allegations in this section are taken from Alrammah's proposed third amended complaint (Third Am. Compl.), as those are the operative allegations for the court's futility analysis in determining his motion for leave to amend.

who is approximately 20 years younger than Alrammah and of a different race and national origin, regularly yelled at him and made false accusations against him. (*Id.* ¶¶ 10, 28, 46.) Unlike his younger coworkers of different races and national origins, Alrammah was not introduced to the team as a Project Engineer and was not provided with full details about pre-existing projects. (*Id.*)

Specifically, Alrammah alleges that he was treated differently compared to his colleague Hamsur Manupac, who is at least 15 years his junior and of a different race and national origin. (Third Am. Compl. ¶¶ 11, 29, 47.) Manupac was also a Project Engineer who "served under" Rodriguez and performed similar engineering duties as Alrammah. (*Id.* ¶¶ 12, 33, 51.) However, unlike Alrammah, Manupac did not hold a master's or Ph.D. in engineering and had significantly less professional experience. (*Id.* ¶¶ 13, 34, 52.) Alrammah alleges that Rodriguez "openly expressed his preference for Manupac to [him] on one or more occasions, an action openly reflective of [Rodriguez's] bias toward [Alrammah] in favor of" a younger, non-Arab, non-Iraqi, similarly situated employee. (*Id.* ¶¶ 14, 35, 53.) On one occasion, Alrammah claims that Rodriguez explicitly questioned him as to whether he was a United States citizen. (*Id.* ¶ 54.)

In response to this treatment, Alrammah made multiple attempts to remedy his situation, including voicing his concerns to supervisors, asking to meet with USACE representatives, and attempting to restructure "his chain of command . . . in order to work under new supervision." (Third Am. Compl. ¶¶ 15, 30, 48.) However, his requests were denied, and he was instead assigned menial tasks that did not fit the job description of a GS-0830-12/Project Engineer. (*Id.* ¶¶ 16, 31, 49.) He was left to search for information on pre-existing projects without any support from the engineering team. (*Id.* ¶ 16.) He claims that his younger coworkers were not subjected to the same treatment. (*Id.*) Additionally, Alrammah contends that similarly situated coworkers

3

of different races and national origins, including Manupac, were allowed to communicate with foreign contractors, study and design projects, and communicate between divisions without any interjections—Alrammah was not afforded the same treatment.  (*Id.* ¶¶ 31, 49.)

On September 1, 2022, Alrammah alleges that he was terminated from his position after Rodriguez wrongfully accused him of misconduct and insubordination.  (Third Am. Compl. ¶¶ 17, 32, 50.)  He contends that his termination directly contradicted his 2022 Civil Performance Plan.  (*Id.*)  Furthermore, he was not given any opportunity to address or correct the alleged instances of wrongdoing.  (*Id.* ¶¶ 18, 36, 55.)  Alrammah contends that he was a victim of unlawful age, race, and national origin discrimination, in violation of the ADEA and Title VII of the Civil Rights Act.  (*Id.* ¶¶ 19–20, 37–38, 56–57.)

In response to his termination, Alrammah filed a formal complaint with his Equal Employment Opportunity representative, but the agency failed to address the complaint within the required 180-day period.  (Third Am. Compl. ¶ 5.)  As a result, he has filed this lawsuit in federal district court, seeking actual damages exceeding $75,000, compensatory and liquidated damages exceeding $75,000, job reinstatement, back pay, front pay, reasonable attorney's fees and expenses, prejudgment interest, and any other relief deemed appropriate by the court.  (*Id.* ¶¶ 23, 41, 60.)

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Rule 15(a)(2) instructs courts to "freely give leave when justice so requires."  *Id.*  "Despite this general rule liberally allowing amendments, . . . a district court may deny leave to amend if the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the

amendment would have been futile." *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 461 (4th Cir. 2013) (internal quotations omitted) (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"). Traditionally, an amendment is futile if it is "clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986) (internal citations omitted). "[D]istrict courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021).

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (4th Cir. 2023) (citing *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). A court need not accept as true a complaint's "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302 (internal citations omitted).

### III. DISCUSSION

The court begins by addressing Alrammah's age discrimination claim under the ADEA,

before discussing the race and national origin discrimination claims under Title VII.

## A.  Count I—Age Discrimination Under the ADEA

USACE argues that Alrammah's third amended complaint "does not cure" the deficiencies previously identified by the court and that the court can "essentially copy and paste" its prior opinion in denying the instant motion because the third amended complaint is futile for the same reasons.[4]  (Def. Br. Opp'n Third Am. Compl. 3.)  USACE further contends that Alrammah's additional allegations regarding the approximate age of his supervisor, Rodriguez (approximately 20 years younger), and a single comparator, Manupac (approximately 15 years younger), do not alter the court's prior conclusion that he has failed to sufficiently allege discriminatory treatment based on his age.  (*See generally id.*)  USACE maintains that the allegations remain speculative and too vague to infer any plausible inference of age-based discrimination.  The court agrees.  Because Alrammah has not sufficiently alleged age-based discrimination beyond a speculative level, the court finds that allowing him leave to file his proposed third amended complaint would be futile.

Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  To state a claim under the ADEA, a plaintiff must show that he is: "(1) over the age of 40, and (2) experienced discrimination by an employer (3) because of his age."  *Tickles v. Johnson*, 805 Fed. App'x. 204, 207 (4th Cir. 2020) (internal citation omitted).  "A plaintiff can prove a violation of the ADEA through direct or circumstantial evidence."  *Cole v. Family Dollar*

---

[4]  Because the pending motion for leave to amend is substantially similar to Alrammah's prior motion, USACE incorporates by reference the arguments from its Memorandum in Support of its Motion to Dismiss (Dkt. No. 26) and its Response in Opposition to Alrammah's Motion for Leave to File a Second Amended Complaint (Dkt. No. 31) in opposing the present motion.  (Def. Br. Opp'n Third Am. Compl. 3.)

*Stores of Md., Inc.*, 811 Fed. App'x. 168, 172 (4th Cir. 2020) (internal citation omitted).  To survive a 12(b)(6) motion the plaintiff "is not required to plead a prima facie case of discrimination, but he must allege facts to satisfy the elements of an ADEA cause of action." *Tickels*, 805 Fed. App'x. at 207 (citation modified).  "The complaint must contain factual allegations sufficient to raise a right to relief above the speculative level and to support a reasonable inference of discrimination." *Id.* (citation modified).

For many of the same reasons articulated in the court's prior opinion, denying Alrammah's motion for leave to file a second amended complaint (Dkt. No. 35), Alrammah fails to plausibly allege that he experienced discrimination by USACE because of his age.  Even when construed in the light most favorable to him, the proposed third amended complaint contains allegations that are too vague and conclusory to support a plausible inference of age discrimination.  The complaint largely repeats the same general and conclusory allegations of discriminatory treatment.  These include allegations that Alrammah was "not introduced to the team as a Project Engineer," "subjected to yelling and false accusations from [Rodriguez]," "was assigned menial tasks that did not fit the job description of a GS-0830-12/Project Engineer," and his supervisors withheld "relevant and necessary information regarding pre-existing projects," whereas his younger coworkers were allegedly not subjected to the same treatment.  (*Compare* Second Am. Compl. ¶¶ 10–13, Dkt. No. 29-1, *with* Third. Am. Compl. ¶¶ 10–16.)

In its prior opinion, the court relied on the Fourth Circuit's decision in *Tickles*, which affirmed the dismissal of two ADEA claims where the complaint left the court "to merely speculate that [plaintiff] was denied a promotion and/or terminated because of his age." *Tickles*, 805 Fed. App'x. at 208.  The Fourth Circuit emphasized the absence of  "specific allegations that would give rise to a reasonable inference of age-based discrimination, such as the nature of the

7

requirements for promotion, [plaintiff's] own qualifications, the qualifications and rule violations of his proposed comparators, or even the proposed comparators' proximity in age to his own." *Id.* Without such detail, the court was "left with mere speculation," which is insufficient to state a plausible claim. *Id.*

Alrammah attempts to cure the deficiencies the court identified in his proposed second amended complaint by adding allegations that Rodriguez is approximately 20 years younger than him and identifying a similarly situated employee, Manupac, who is approximately 15 years younger. (Third Am. Compl. ¶¶ 10–12.) Alrammah further alleges that "Rodriguez openly expressed his preference for Manupac to [him] on one or more occasions," which he suggests is "openly reflective of [Rodriguez's] bias towards [him] in favor of a younger, similarly situated colleague." (*Id.* ¶ 14.) While these additions provide some additional detail, they remain insufficient. The complaint does not describe the context, content, or circumstances of the alleged statements reflecting Rodriguez's preference for Manupac. Nor does it provide allegations linking that preference to age, as opposed to other non-discriminatory reasons. Although the court must draw reasonable inferences in Alrammah's favor, the inference that any preference was *because of* age is speculative at best.

While Alrammah alleges a series of actions that could suggest unfair treatment, he fails to provide sufficient factual allegations to give rise to a reasonable inference that those actions were motivated by age discrimination. As the *Tickles* court emphasized, a plaintiff must allege facts consistent with age discrimination that are plausible—not merely conceivable. *Tickles*, 805 Fed. App'x. at 208 (citing *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017)). Alrammah alleges, at best, conceivable age-based discrimination. That is not enough. The court

8

is left with mere speculation as to whether the alleged mistreatment was due to Alrammah's age.[5] Such speculation and unwarranted inferences are insufficient to survive a motion to dismiss. *See e.g.*, *Spassova-Nikolova v. Rollins*, No. 1:22-CV-1361, 2025 WL 817865, at *3 (E.D. Va. Mar. 12, 2025) (dismissing ADEA claim because, despite the plaintiff alleging seven potential adverse events, her allegations were "too conclusory and factually unadorned to give rise to a reasonable inference that her challenged employment decisions were because of her age" (citing *Tickles*, 805 F. App'x at 208)).

Accordingly, Alrammah's proposed third amended complaint fails to provide sufficient factual allegations to "nudge his [age discrimination] claim[] across the line from conceivable to plausible." *Tickles*, 805 Fed. App'x. at 208 (citation modified). Therefore, his ADEA claim is futile, and the court will deny his motion for leave to amend.

## B. Counts II and III—Race and National Origin Discrimination Under Title VII

USACE argues that Alrammah's Title VII claims are also futile because he fails to sufficiently allege facts to support an inference of discriminatory intent based on his race or national origin. (Def. Br. Opp'n Third Am. Compl. 3–4.) The court agrees. Because Alrammah has not sufficiently alleged race or national origin discrimination beyond a speculative level, the court finds that allowing him leave to file his proposed third amended complaint would be futile.

Under Title VII, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C.

---

[5] The court notes that Alrammah also alleges that these same instances of mistreatment can be attributed to discrimination based on his race and national origin. However, even when viewing these allegations in the light most favorable to him, the court cannot plausibly infer any race or national origin discrimination here either. While the court dismisses the Title VII claims of race and nation origin discrimination on similar, though distinct, grounds (*see infra* Sec.III.B), the race and national origin claims, as alleged in the third amended complaint, suffer from the same deficiencies as this ADEA claim

§ 2000e-2(a)(1).  "To survive a motion to dismiss a Title VII [] discrimination claim, the complaint must allege facts 'that plausibly state a violation of Title VII above a speculative level.'"  *Johnson v. Balt. City*, 163 F.4th 808, 814 (4th 2026) (citing *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (quoting *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010))).

"A plaintiff can establish a claim of [national origin or] racial discrimination pursuant to Title VII by employing one of two methods of proof: (1) demonstrating through direct evidence that her [national origin or] race was a motivating factor in the employer's adverse employment action; or (2) relying on the burden shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973)."  *Johnson*, 163 F.4th at 814.  Here, Alrammah does not allege direct evidence and instead proceeds under the *McDonnell Douglas* framework.[6]  Under this framework, "a prima facie case of discrimination requires a showing of: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) the adverse employment action occurred 'under circumstances giving rise to an inference of unlawful discrimination.'"  *Id.* at 815 (citing *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 255 (4th Cir. 2025)).  "Courts frequently reframe the fourth element . . . as 'similarly situated comparators' . . .because the fourth element can be met by establishing 'similarly-

---

[6] Alrammah did not file a reply to USACE's opposition and therefore appears to rest on the allegations in his proposed third amended complaint.  To the extent he contends that the complaint pleads direct evidence that his race or national origin was a motivating factor in his termination, that argument is unavailing for the same reasons discussed *supra* Section III.A.

Alrammah alleges several instances in which he was treated differently from similarly situated employees, specifically Manupac, but these allegations do not plausibly support an inference that any such treatment was based on his race or national origin.  Moreover, none of the alleged instances of disparate treatment are connected to the adverse employment action—his termination.  Although Alrammah asserts that "Rodriguez, on at least one occasion, explicitly questioned [him] as to whether [he] was a United States citizen," he does not allege any temporal or causal connection between that statement and his termination.  *See Matias v. Elon Univ.*, 780 F. App'x 28, 30 (4th Cir. 2019) ("Direct evidence must be evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.")  For the court to draw such inference would be speculative and unreasonable.

situated employees outside the protected class received more favorable treatment.'" *Id.* (citation modified).

There is no dispute that Alrammah plausibly alleges the first three elements—that he is a member of protected classes (race and national origin), that he performed his job satisfactorily, and that he suffered an adverse employment action when he was terminated on September 1, 2022.[7] Accordingly, the only issue is whether the complaint plausibly alleges circumstances giving rise to an inference of unlawful discrimination.

The court previously denied Alrammah's motion for leave to file his second amended complaint as to his Title VII claims because he failed to allege facts supporting race or national origin discrimination beyond a speculative level. (*See* Dkt. No. 35, 8 n.6; 10–12.) The court emphasized that Alrammah did not plausibly allege that similarly situated employees of different races or national origins were treated more favorably. (*Id.* at 10–12.) In his proposed third amended complaint, Alrammah attempts to cure this deficiency by identifying a single comparator, Manupac, a fellow Project Engineer of a different race and national origin. (Third Am. Compl. ¶¶ 32–33; 49, 51.) However, this addition does not elevate Alrammah's Title VII claims beyond a speculative level.

"Where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, the similarity between comparators must be clearly established in order to be meaningful." *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017) (citation modified). "[T]here must be 'sufficient commonalities

---

[7] The court identifies Alrammah's termination from employment with USACE as the only adverse employment action alleged in the complaint, and there appears to be no dispute on this point. The Fourth Circuit has explained that, under Title VII, "an adverse action is one that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Thomas v. City of Annapolis*, 851 Fed. Appx. 341, 345 (4th Cir. 2021) (citation modified). Alrammah's termination is the sole action alleged that satisfies this standard, and he has not argued otherwise.

on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination.'" *Johnson*, 163 F.4th at 815 (citing *Swaso*, 698 F. App'x at 748). "While there is no 'bright-line' rule for what makes two comparators 'similar' for purposes of Title VII claims, courts consider 'whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision.'" *Id.* (citing *Spencer v. Virginia State University*, 919 F.3d 199, 207 (4th Cir. 2019). Critically, the comparator "must have been treated more favorably than the [p]laintiff with respect to the adverse action complained of." *Wilson v. City of Chesapeake*, 290 F. Supp. 3d 444, 458 (E.D. Va. 2017), *aff'd*, 738 F. App'x 169 (4th Cir. 2018) (citing *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)).

Alrammah alleges that Manupac was a fellow Project Engineer who "served under" Rodriguez and had similar job duties.[8] (Third Am. Compl. ¶¶ 33, 51.) But the alleged similarities largely end there. Alrammah alleges that Manupac lacked Alrammah's 35 years of experience and did not possess his advanced educational credentials, including both a master's degree and a Ph.D. (*Id.* ¶¶ 34, 52.) These allegations undermine, rather than support, an inference that the two were similarly situated in all relevant respects. The proposed complaint leaves the court to speculate whether they were subject to the same performance standards, or whether they were the same "level" of Project Engineer. Whereas Alrammah specifically notes

---

[8] It is unclear whether the phrase "served under" necessarily means that Rodriguez supervised both Alrammah and Manupac. Defendants argue that Rodriguez was not Manupac's supervisor. (Def. Br. Opp'n Third Am. Compl. 4 n.1.) At this stage of the litigation, however, the court is limited to the allegations in the complaint and must draw all reasonable inferences in Alrammah's favor. Accordingly, the court infers that Rodriguez supervised both Alrammah and Manupac.

that he was a GS-0830-12 Project Engineer, those job-level details are not provided for Manupac. Although Alrammah alleges that they had "similar job duties in the context of engineering services required of them," it is unclear what, if any, other job duties the two had.

Furthermore, the complaint fails to allege any meaningful connection between Manupac and Alrammah's termination. It alleges that Alrammah "was terminated from his employment . . . as a result of [] Rodriguez wrongfully accusing him of misconduct and insubordination, in direct contradiction of his 2022 Civil Performance Plan, while a similarly situated employee of differing race [and nationality], i.e. Manupac, was not similarly mistreated." (Third Am. Compl. ¶¶ 32, 50.) Notably absent from the complaint, are any allegations that Manupac engaged in similar conduct, was accused of comparable misconduct, or was otherwise similarly situated with respect to the circumstances leading to Alrammah's termination. Although he asserts Manupac "was not similarly mistreated" with respect to his termination, this conclusory assertion is unsupported by factual allegations linking Manupac to the adverse employment action.

Accordingly, the complaint does not plausibly allege that Manupac—the sole comparator identified in the complaint—was treated more favorably with respect to the termination decision. Without such allegations, Alrammah fails to establish the required nexus between a comparator and the adverse employment action. *See Thweatt v. Prince George Cnty. Sch. Bd.*, No. 3:21CV258-HEH, 2021 WL 4046404, at *5 (E.D. Va. Sept. 3, 2021) (dismissing Title VII claim because plaintiff does not sufficiently relate similarly situated comparators to any adverse employment action).

In short, merely identifying a coworker with the same job title who is outside Alrammah's protected class and was not terminated, whereas Alrammah was, is insufficient to state a plausible Title VII claim. Although Alrammah alleges instances of workplace

13

mistreatment and favoritism toward a colleague, any conclusion that these circumstances give rise to an inference of unlawful discrimination based on race or national origin, in connection with his termination, is speculative at best.

Because Alrammah's proposed third amended complaint fails to allege facts sufficient to state a plausible claim of race or national origin discrimination under Title VII, amendment would be futile. Accordingly, the court will deny Alrammah's motion for leave to amend.

## IV.  CONCLUSION

For the foregoing reasons, the court finds that Alrammah's claims against USACE, as alleged in his proposed third amended complaint, are futile. Therefore, the court denies Alrammah's motion for leave to file his third amended complaint. Furthermore, all claims are dismissed with prejudice because Alrammah was given three opportunities to amend his complaint and failed to state any valid claims. *See Chenevert v. Kanode*, No. 7:21-CV-00562, 2023 WL 6279906, at *10 (W.D. Va. Sept. 26, 2023), *aff'd*, No. 23-7056, 2024 WL 2815172 (4th Cir. June 3, 2024) (dismissing claims with prejudice after three failed attempts by plaintiff to state a valid claim).

An appropriate order will issue.

Entered: March 30, 2026.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge

14